IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

LOUIS ALFORD,                          )
                                       )
        Plaintiff,                     )
                                       )       No. 3:23-cv-00272
v.                                     )       JUDGE RICHARDSON
                                       )
BRANDON DEFFENDOL, ZACHARY             )
SMITH, and CANNON COUNTY,              )
TENNESSEE,                             )
                                       )
        Defendants.                    )

## **MEMORANDUM OPINION**

Pending before the Court is Defendants' motion for summary judgment (Doc. No. 27, "Motion") wherein Defendants seek summary judgment in their favor against Plaintiff ("Alford"). In support of the Motion, Defendants filed a memorandum (Doc. No. 28, "Memorandum") and a "Statement of Undisputed Material Facts" (Doc. No. 29). Plaintiff, Louis Alford ("Alford")[1], filed a response in opposition (Doc. No. 33, "Response") and a response to Defendants' statement of material facts (Doc. No. 32, "RSUMF"). Defendants thereafter filed a reply (Doc. No. 36, "Reply"). For the reasons stated herein the Motion will be GRANTED IN PART AND DENIED IN PART.

---

[1] The Court refers to Plaintiff as "Alford" when discussing the underlying facts of the case and as "Plaintiff" when referring to Alford as a litigant in this suit (i.e. making assertions, filing documents, etc.).

<u>FACTS</u>[2]

Brandon Deffendoll ("Deffendoll") and Zachary Smith ("Smith") were police officers employed by Cannon County Sheriff's Office during the incidents described in the Complaint. On March 25, 2022, Deffendoll and Smith stopped Louis Alford and his girlfriend Julie Cass for a traffic violation. (RSUMF ¶ 3). When they stopped the vehicle, neither Smith nor Deffendoll knew that Alford was driving the vehicle. (RSUMF ¶ 5). Alford did not own the pickup truck that he was driving, which did not have working taillights. Deffendoll approached the truck and asked Alford for the vehicle's registration and insurance information. (RSUMF ¶ 6). At this point, either Alford or Cass raised up the vehicle's dashboard cover, thereby revealing a hypodermic needle that contained a clear liquid. (RSUMF ¶ 6). Defendants assert that this gave Deffendoll probable cause to search the truck for evidence of illegal drugs. Deffendoll and other officers conducted a search, which resulted in Deffendoll recovering scales, small clear baggies, a bottle of medication containing white pills prescribed to another individual, a black container of needles, and a bag containing a powdery substance. (RSUMF ¶ 11). Deffendoll believed the presence of scales and baggies to be consistent with the possession and sale of illegal drugs. (RSUMF ¶ 12). Deffendoll

---

[2] The facts that are stated herein without qualification are undisputed—a term the Court will use to describe both facts that are not in dispute *at all* and facts that are not in *genuine* dispute—and are treated as such. Alleged facts that are qualified here in some way (as for example by being prefaced with "Defendants assert that") are in dispute and are treated as such. Some of the facts herein originate in Defendants' "Statement of Undisputed Material Facts" and are not disputed by Plaintiff (in the RSUMF) in response to Defendants' assertion of them. For these facts, the Court cites the RSUMF.

Other facts contained herein come from record evidence (such as depositions) and are cited (as being accurate) by the opposing parties in their respective briefing. Other facts (background, uncontroversial ones) are mutually stated in the parties' opposing briefing.

There are other purported facts that are disputed but are evidentially supported and are asserted by Plaintiff and Defendants, respectively, to support their respective views that there is (according to Plaintiff) or is not (according to Defendants) a genuine issue of material fact as to a particular claim. The Court refers to these purported facts, and the evidence supporting them, in appropriate places in its analysis below.

claims that he also believed that the clear substance contained in the hypodermic needle was heroin based on his experience, training and drug interdiction education.[3]

As a result of this search, Deffendoll made the decision to arrest Alford. (RSUMF ¶ 21). Deffendoll charged Alford with three crimes: Possession Prescription Unlawful, Simple Possession of a Schedule I Drug, and Possession of Drug Paraphern[a]lia. Defendants allege that Deffendoll had probable cause to arrest and charge Alford with these crimes. (RSUMF ¶ 22). The Affidavits of Complaint that Deffendoll completed were signed by a Judge, Clerk, or Judicial Commissioner attesting that he or she found there was probable cause that Alford had committed the crimes.[4] (RSUMF ¶ 22). Defendants assert that the information in the Affidavits of Complaint was truthful and accurate.[5] (RSUMF ¶ 23).

---

[3] Plaintiff disputes this alleged fact. RSUMF ¶ 13. The Court adds this fact solely for context. It does not have to decide whether this alleged fact is in genuine dispute, because the fact is not material. Deffendoll's subjective belief does not bear on the legal analysis because the appropriate legal standard is not geared to the defendant-officer's subjective beliefs, but rather focuses on what a reasonable officer in similar circumstances could have determined.

> The relevant question in this case, for example, is the objective (albeit fact-specific) question whether a reasonable officer could have believed Anderson's warrantless search to be lawful, in light of clearly established law and the information the searching officers possessed. Anderson's subjective beliefs about the search are irrelevant.

*Anderson v. Creighton*, 483 U.S. 635, 641 (1987). *See also id.* (refuting that "the qualified immunity analysis [involves an] inquiry into officials' subjective intent").

[4] The RSUMF does not go into detail about who in fact actually signed the affidavit (i.e. if it was a Judge, Clerk or Commissioner). The exhibits include the form with a signature, which the undersigned has not been able to accurately decipher. Regardless, Plaintiff has admitted that "a commissioner signed the warrants" referring to the signed Affidavits of Complaint prepared by Deffendoll.

[5] Plaintiff disputes this on the grounds that the Complaint wrongly stated that Deffendoll believed the syringe contained heroin and that Deffendoll did not in fact believe that.

At the time of the arrest on March 25, 2022, Alford was on parole from a murder charge that took place in 1990.[6] (RSUMF ¶ 25). As a condition of his parole, Alford agreed to warrantless searches of his property at any time as well as random drug testing. (RSUMF ¶ 26). Following the arrest of Alford on March 25, 2022, neither Deffendoll nor Smith made any decisions regarding the criminal prosecution of Alford. (RSUMF ¶ 24). Neither Deffendoll nor Smith were privy to the purported arrangement where Alford's charges stemming from the March 25 incident would have been dismissed in exchange for Alford becoming a criminal informant. (RSUMF ¶¶ 30-31). That purported arrangement, which ultimately did not come to fruition, was handled exclusively by the District Attorney's office. (RSUMF ¶¶ 24, 30-31). The charges against Alford ultimately were dismissed.[7] (RSUMF ¶ 35).

Following Alford's arrest, the Board of Parole conducted a hearing concerning Alford, which included testimony from Deffendoll and others. (RSUMF ¶ 27). On May 20, 2022, the Parole Board made the decision to revoke Alford's parolee status. (RSUMF ¶ 29). Conversely, Deffendoll did not make the decision to revoke Alford's parolee status. (RSUMF ¶ 29).

Alford filed this suit, asserting in his Complaint (Doc. No. 1) one cause of action under federal law and three causes of action under Tennessee common law. Specifically, the causes of action were: Count I, a claim under 42 U.S.C. § 1983 against all Defendants based on alleged violations of Alford's Fourth Amendment right against the unreasonable seizure of his person; Count II, a false-arrest claim under Tennessee common law against Deffendoll and Smith; Count III, a malicious-prosecution claim under Tennessee common law against Deffendoll; and Count

---

[6] The Court notes that it is unclear as to what exactly took place in 1990—the murder or the charge (or both).

[7] There is a dispute about the how the charges were actually dismissed. Defendants claim that they were dismissed by Assistant District Attorney Lampley while Plaintiff claims that they were dismissed by the judge for failure to prosecute.

IV, an abuse-of-process claim under Tennessee common law against Deffendoll and Smith. (*Id.* at 9-11; RSUMF ¶ 2).

<u>LEGAL STANDARD</u>

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). In other words, even if genuine, a factual dispute that is irrelevant or unnecessary under applicable law is of no value in defeating a motion for summary judgment. *See id.* at 248. On the other hand, "summary judgment will not lie if the dispute about a material fact is 'genuine[.]'" *Id.*

A fact is "material" within the meaning of Rule 56(c) "if its proof or disproof might affect the outcome of the suit under the governing substantive law." *Reeves v. Swift Transp. Co.*, 446 F.3d 637, 640 (6th Cir. 2006) (citing Anderson, 477 U.S. at 248), *abrogated on other grounds by Young v. Utd. Parcel Serv.*, 575 U.S. 206 (2015). A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Harris v. Klare*, 902 F.3d 630, 634–35 (6th Cir. 2018). The party bringing the summary judgment motion has the initial burden of identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 627–28 (6th Cir. 2018) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Alternatively, the moving party may meet its initial burden by otherwise "show[ing]"—even without citing materials of record—that the nonmovant "cannot produce admissible evidence to support a material fact (for example, the existence of an element of a nonmovant plaintiff's claim)." Fed. R. Civ. P.

56(c)(1)(B). If the summary judgment movant meets its initial burden, then in response the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *Pittman*, 901 F.3d at 628. Importantly, "[s]ummary judgment for a defendant [that has met its initial burden as the movant] is appropriate when the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to [her] case, and on which [she] will bear the burden of proof at trial.'" *Cleveland v. Pol'y Mgmt. Sys. Corp.*, 526 U.S. 795, 805–06 (1999) (quoting *Celotex*, 477 U.S. at 322).

Any party asserting that a fact cannot be or genuinely is disputed (i.e., any party seeking summary judgment and any party opposing summary judgment, respectively) can support the assertion either by: (a) citing to materials in the record, including, but not limited to, depositions, documents, affidavits, or declarations, Fed. R. Civ. P. 56(c)(1)(A), or (b) "showing" (i) that the adverse party cannot produce admissible evidence to raise a genuine dispute as to that fact or (ii) that contrary to the claim of the adverse party, the materials cited by the adverse party do not actually establish the absence or presence (as the case may be) of a genuine dispute as to that fact.[8]

In reviewing a motion for summary judgment, this court must view the evidence in the light most favorable to the non-moving party. *Tlapanco v. Elges*, 969 F.3d 638, 647 (6th Cir. 2020) (quoting *Anderson*, 477 U.S. at 248). Likewise, the court should view the facts and draw all reasonable inferences in favor of the non-moving party. *Pittman*, 901 F.3d at 628. Credibility judgments and weighing of evidence are improper. *Hostettler v. College of Wooster*, 895 F.3d 844, 852 (6th Cir. 2018). As noted above, where there is a genuine dispute as to any material fact,

---

[8] Courts (appropriately) at times refer interchangeably to (i) a party being able (or unable) to raise a genuine issue as to fact and (ii) a reasonable jury being able (or unable) to find in the party's favor on that fact. This Court does likewise herein.

summary judgment is not appropriate. *Id.* The court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id.* The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient to survive summary judgment; rather, there must be evidence upon which the jury could reasonably find for the non-moving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

Deffendoll has moved for summary judgement based on qualified immunity, an affirmative defense, in response to Plaintiff's 1983 claims.[9] (Memorandum at 5). Qualified immunity protects government officials from civil suits for damages, so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Rieves v. Town of Smyrna, Tennessee*, 959 F.3d 678, 695 (6th Cir. 2020) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The Court is required to employ a two-part test to determine whether a government official is entitled to qualified immunity. *Id.* at 695. It must consider (1) whether the official's conduct violated a constitutional right, and (2) whether that constitutional

---

[9] For whatever reason, Smith's defense (unlike Deffendoll's defense) does not rely on qualified immunity, but instead relies solely on challenging Plaintiff's ability to make a Fourth Amendment claim against him— in other words that, irrespective of any qualified immunity defense, Smith is entitled to summary judgment because (according to Defendants) Plaintiff cannot show that a reasonable jury could find in Plaintiff's favor given the undisputed facts. That is to say, Smith's defense is based entirely on the merits of Plaintiff's claim that Smith is liable for an alleged constitutional violation (which is the subject of the first question in the qualified immunity analysis), whereas a qualified immunity defense can succeed (based on a negative answer to the second question) even if such claim is deemed meritorious (based on an affirmative answer to the first question). As put by one district court in this circuit:

> [T]he first prong of the qualified immunity analysis necessarily merges with the Court's decision on the underlying merits of Plaintiff's claims that the officers used excessive force against him. If the Court finds that the officers did, in fact, violate Plaintiff's constitutional rights, the Court must then go on to consider the second prong of the qualified immunity test. If the officers engaged in [a constitutional violation], but the relevant law was not clearly established, they cannot be held liable.

*Hysell v. Thorp*, No. 2:06-CV-170, 2009 WL 262426, at *14 (S.D. Ohio Feb. 2, 2009).

right was clearly established. *Wright v. City of Euclid, Ohio*, 962 F.3d 852, 864 (6th Cir. 2020).[10]

Courts are permitted to address these two questions in either order. *See Pearson v. Callahan*, 555

U.S. 223, 236 (2009). If either question is answered in the negative, then the official is entitled to

qualified immunity. *Gordon v. Bierenga*, 20 F.4th 1077, 1082 (6th Cir. 2021).

This defense alters the "normal" standards that govern a typical motion for summary

judgment. While the Sixth Circuit has issued a number of sometimes-conflicting opinions

regarding the applicable standard for assessing qualified immunity at the summary judgment stage,

this Court is inclined to follow *Gardenhire v. Schubert*, 205 F.3d 303, 311 (6th Cir. 2000), *cited

with approval by Flying Dog Brewery, LLLP v. Michigan Liquor Control Comm'n*, 597 F. App'x

342, 352 (6th Cir. 2015), given its relative specificity. That case instructed, in pertinent part:

> Where a defendant moves for summary judgment based on qualified immunity, the
> plaintiff must first[11] identify a clearly established right alleged to have been violated

---

[10] In a very recent published opinion, the Sixth Circuit has observed that "some Fourth Amendment principles, well established though they are, offer little guidance in qualified-immunity cases . . . . General principles clearly establish the answer only for obvious violations. For everything else, the clarity of the rule depends 'very much on the facts of each case' and the application of refined Fourth Amendment principles." *Moore v. Oakland County, Mich.*, No. 24-1563, 2025 WL 274631, *2 (6th Cir. 2025) (citing *Brosseau v. Haugen*, 543 U.S. 194, 201 (2004) (per curiam)). This analysis indicates that courts must look specifically at the factual circumstances in order to determine whether the constitutional right at issue was clearly established when conducting a qualified immunity determination. Further, the Court noted that in order to show that the "right's contours were sufficiently clear such that every reasonable official would have understood that the officer's actions violated it" a claimant must usually "identify a case with facts similar enough that it squarely governs [the current] one[.]" *Id.* (internal quotation marks and citations omitted).

[11] Given the logical sequencing of briefing on a defendant's motion for summary judgment, this Court does not take *Gardenhire* to mean that the (non-movant) plaintiff must somehow "make the first move" (in the form of identifying a clearly established right) when trying to overcome a qualified immunity defense asserted in the defendant's motion for summary judgment. After all, how could it be the plaintiff who acts first on such a motion, when (as the non-movant) he or she is *responding* to what was filed by the defendant, who as the movant goes first? Instead, this Court reads *Gardenhire* as establishing that it is incumbent upon *the defendant* to make the first move; this is consistent with *Gardenhire's* language italicized below and with general summary judgment principles outlined above that place an initial burden upon the defendant-movant to do something. *Gardenhire* identifies the first move that the defendant-movant must make: an initial showing of something, namely, "facts to suggest that he acted within the scope of his discretionary authority during the incident in question." *Gardenhire v. Schubert*, 205 F.3d at 311 (6th Cir. 2000). What

and second, establish that a reasonable officer in the defendant's position should have known that his conduct violated that right. *See Pray v. City of Sandusky,* 49 F.3d 1154, 1158 (6th Cir.1995); *Johnson v. Estate of Laccheo,* 935 F.2d 109, 111 (6th Cir.1991). The ultimate burden of proof is on the plaintiff to show that the defendant is not entitled to qualified immunity. *See Wegener v. Covington,* 933 F.2d 390, 392 (6th Cir.1991). *The defendant bears the initial burden of coming forward with facts to suggest that he acted within the scope of his discretionary authority during the incident in question.* Thereafter, the burden shifts to the plaintiff to establish[12] that the defendant's conduct violated a right so clearly established that any official in his position would have clearly understood that he was under an affirmative duty to refrain from such conduct. *See Rich v. City of Mayfield Heights,* 955 F.2d 1092, 1095 (6th Cir.1992). This Court has held, however, that:

> summary judgment would not be appropriate if there is a factual dispute (*i.e.,* a genuine issue of material fact) involving an issue on which the question of immunity turns, such that it cannot be determined before trial whether the defendant did acts that violate clearly established rights. Summary judgment also should be denied if the undisputed facts show that the defendant's conduct did indeed violate clearly established rights. In either event, the case will then proceed to trial....

*Poe v. Haydon,* 853 F.2d 418, 425–26 (6th Cir.1988).

*Gardenhire v. Schubert*, 205 F.3d 303, 311 (6th Cir. 2000) (citations omitted) (emphasis and footnotes added). Notably, *Gardenhire* accounts for the fact that *if either* of the above referenced questions is answered in the affirmative, then the officer has qualified immunity. It does so by making clear that a plaintiff cannot survive summary judgment solely by prevailing on the question of whether the officer violated the plaintiff's constitutional right(s); rather, the plaintiff also must

---

*Gardenhire* has done here is reframe the description of what a summary judgment movant must initially show (the absence of a genuine issue of material fact) in terms of what is material when the question is one of qualified immunity (whether the officer acted within the scope of his authority during the incident in question). If the defendant has made the specific initial showing required by *Gardenhire*, then the burden shifts to the plaintiff to show the existence of a triable issue that defendant's conduct violated a clearly established right identified by the plaintiff.

[12] As indicated above, the Court does not take *Gardenhire* to require a plaintiff to "establish" this at the summary judgment stage. Instead, the Court take this to mean that a plaintiff has the burden to show the existence of a triable issue—i.e., a material issue as to which there exists a genuine dispute—in order to overcome a qualified-immunity defense as to which a defendant movant has met its initial burden.

prevail on the question of whether that right was "so clearly established that any official in his position would have clearly understood that he was under an affirmative duty to refrain from such conduct," *Id.*—which is to say, would have understood "that what he is doing violates that right." *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (internal quotation marks omitted). Using as it does the "any official in his position" standard, the question is manifestly an objective one; it "turns on the objective legal reasonableness of the [officer's] action, assessed in light of the legal rules that were clearly established at the time it was taken." *Pearson,* 555 U.S. at 244 (internal quotation marks omitted).

Consistent with a footnote herein, the Court takes *Gardenhire to* mean the following. First, a defendant who moves for summary judgment relying on a qualified-immunity defense has the initial burden to come forward with facts suggesting that the official acted within his or her discretionary authority when the alleged violation took place. If the defendant successfully carries that burden, the burden then switches to the plaintiff to raise a triable issue showing that the "defendant's conduct violated a right so clearly established that any official in his position would have clearly understood that he was under an affirmative duty to refrain from such conduct." *Gardenhire*, 205 F.3d at 311. If a plaintiff successfully carries that burden, then summary judgment will be denied. Otherwise, summary judgment will be granted.

<u>DISCUSSION</u>

I.      **Count I: § 1983 Claims**

   A.   <u>Officer Deffendoll</u>

      1.   *False Arrest*[13]

---

[13] The Court notes that the parties' briefing has addressed the § 1983 claims under the categories of "false arrest" claims and "malicious prosecution" claims, even though these categories were not so identified in the Complaint. Instead of using these categories, Count I characterized its claim(s) as being based on a

Claiming that Deffendoll violated his federal constitutional rights, Plaintiff has asserted and has alleged a claim against Deffendoll under 42 U.S.C. § 1983. This kind of claim provides "a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144 (1979). Section 1983 claims require the plaintiff to show "(1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Dominguez v. Corr. Med. Servs.,* 555 F.3d 543, 549 (6th Cir. 2009). Alford asserts that Deffendoll violated his Fourth Amendment right against unreasonable seizure by arresting him

---

violation of Plaintiff's Fourth Amendment right against the unreasonable seizure of his person. The Court has followed the parties' lead and divided the § 1983 claim(s) into these two categories in its analysis. Although the precise meaning and significance of the term "false arrest" can vary with the circumstances, the Court notes that the Sixth Circuit has referred at times to a violation of an individual's Fourth Amendment right to be free from an unreasonable seizure as a "false arrest." *See, e.g., Ouza v. City of Dearborn Heights, Michigan* 969 F.3d 265, 280. And the Sixth Circuit has noted that a claim under the Fourth Amendment for "malicious prosecution is different from a claim of 'false arrest' under the Fourth Amendment." *Tlapanco v. Elges*, 969 F.3d 638, 654 n.3 (6th Cir. 2020). Although *Tlapanco* emphasized that this difference was due to the former kind of claim being based on the "post-arrest" phase of a prosecution, recent caselaw has indicated that lack of probable cause resulting in a seizure constitutes an indispensable element of a malicious-prosecution claim (and not just a false-arrest claim). As the Sixth Circuit recently stated, "th[e] distinction between a seizure and a prosecution does not matter" for this analysis—a malicious-prosecution claim (like a false-arrest claim) requires an unreasonable seizure under the Fourth Amendment. *Lester v. Roberts*, 986 F.3d 599, 607 (6th Cir. 2021). Accordingly, there is commonality between false-arrest claims and malicious-prosecution claims in that an essential element of both is a Fourth Amendment violation caused by an unreasonable seizure.

Clearly, there are grounds for justifiable frustration with the labels applied to Fourth Amendment claims based on unreasonable seizures. *Id.* at 658 ("'malicious prosecution' is a troublesome label for claims based on unreasonable pretrial detention.") (Thapar, J., concurring); 660 n.1 (6th Cir. 2020) ("While we're at it, we might want to stop using the 'false arrest' and 'false imprisonment' labels too. The elements of common-law false arrest or false imprisonment are not a perfect match for a Fourth Amendment unreasonable-seizure claim (for instance, the required interference with liberty in false imprisonment is a 'confinement,' not a 'seizure'). For maximum clarity, we should simply call every unreasonable-seizure claim what it is: an unreasonable-seizure claim.") (Thapar, J., concurring) (citations omitted). But for now, the Court follows the parties' invitation to use these labels and conduct its analysis according to the two categories suggested by such labeling. This being the case, the Court notes that it is a matter of perspective whether one views Count I as presenting one claim or two claims; below, the Court generally refers to Count I as if it presented multiple claims.

without probable cause (constituting "false arrest" within the current terminology for this kind of § 1983 claim under the Fourth Amendment). (*See* Complaint ¶¶ 55—56).

In response to this claim, Deffendoll has raised a qualified immunity defense. Qualified immunity serves to protect "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Barker v. Goodrich*, 649 F.3d 428, 433 (6th Cir. 2011) (citations omitted). As discussed, when raising a qualified immunity defense at the summary judgment stage a defendant must initially "com[e] forward with facts to suggest that he acted within the scope of his discretionary authority during the incident in question." *Gardenhire v. Schubert*, 205 F.3d 303, 311 (6th Cir. 2000).

To that end, Deffendoll has provided purported factual information in a sworn declaration. (Doc. No. 27-7). Therein, Deffendoll avers, "During the course of the traffic stop . . . I spotted a hypodermic needle containing a clear liquid, which had been previously hidden under the dashboard cover and was revealed when either Alford or Cass moved the dashboard cover". (*Id.* ¶ 6). Deffendoll also made an averment regarding his subjective belief[14] as to probable cause, stating that "because of the hypodermic needles' [sic] placement and the apparent attempt to keep the hypodermic needle hidden, I believed I had probable cause to conduct a search of the entire vehicle for evidence of illegal drugs and drug use." (*Id.* ¶ 7). During the subsequent search of the truck, Deffendoll stated that he found "scales, small clear baggies, a black container filled with more syringes/needles, and a bag containing a powder substance." (*Id.* ¶ 9). He also stated that he "discovered a prescription pill bottle containing six oblong, white pills," that belonged to someone

---

[14] The Court notes that the subjective state of mind of Officer Deffendoll does not bear on the legal standard in this instance, which focuses on the *objective* reasonableness of an officer's determination pertaining to probable cause. However, the Court includes this for context.

not in the vehicle at the time. (*Id.* ¶ 8). Deffendoll averred that he "believed the clear substance contained in the hypodermic needle to be heroin" and that "[t]his belief… was formed by my experience, training, and curriculum," and stated that based on courses he took at Walter State Police Academy he "learned that drug users will often dissolve illicit substances in their powder form into water to be injected." (*Id.* ¶ 11). Based on this search, Deffendoll declared that he thought he "had probable cause to arrest Alford for Possession of Prescription Unlawful, Simple Possession of a Schedule I drug, and Possession of Drug Paraphern[a]lia." (*Id.* ¶ 14).[15]

Based on these sworn statements from Deffendoll's declaration, the Court finds that Deffendoll has met his initial burden under the qualified immunity standard. He has raised ample evidence suggesting that he acted within the scope of his discretionary authority, i.e., acted reasonably as an officer in finding probable cause to arrest Alford in light of the knowledge this evidence suggests he had: knowledge that syringes, a powdery substance (that turned out to be methamphetamine), baggies, scales, and prescription pills were in Alford's truck.

The burden therefore shifts to Plaintiff to show that there exists a genuine issue as to whether Deffendoll's conduct violated a right so clearly established that any official in his position would have clearly understood that he was under an affirmative duty to refrain from such conduct. *See Gardenhire*, 205 F.3d at 311. Plaintiff has not successfully done so. In his Response, Plaintiff claims that the "most serious" charges concerned the heroin and paraphernalia. (Doc. No. 33 at 6). Plaintiff argues that Deffendoll did not have a basis to think that Alford was in possession of heroin based on his search of the truck. Alford specifically points to Deffendoll's deposition (which was

---

[15] The Court again notes that the applicable legal standard here is whether a reasonable officer in these circumstances could have determined that there was probable cause to arrest Alford. The Court includes the above quoted language because it indicates not only subjectively that there was probable cause but also would indicate to a reasonable officer that there was probable cause.

taken prior to the submission of his declaration) in which Deffendoll stated that he could not recall why or even whether—at the time of Alford's arrest—he believed that the syringe contained heroin. (Doc. No. 31-1).[16] Plaintiff uses this statement to argue that Deffendoll did not believe that the syringe contained heroin. Even accepting this argument, Plaintiff still fails to meet his burden. As previously stated, the key analysis here is what a reasonable officer could have believed at the time, not what Officer Deffendoll subjectively believed himself. The Court finds that a reasonable officer could have found probable cause under these circumstances. Therefore Plaintiff does not meet his burden when arguing that Deffendoll violated a clearly established constitutional right.

When viewed in its totality, the evidence that Plaintiff has put forth does not suffice to show a triable issue as to whether "[Deffendoll's] conduct violated a right so clearly established that any official in his position would have clearly understood that he was under an affirmative duty to refrain from such conduct." *Gardenhire*, 205 F.3d at 311. More specifically, (i) Plaintiff has failed to show a genuine dispute as to any underlying facts that bear on this issue (i.e., whether a reasonable officer could have found probable cause to arrest Alford), and (ii) based on the facts not materially in dispute, Plaintiff fails to show that a reasonable officer in Deffendoll's position would have clearly understood that he was under an affirmative duty to refrain from arresting Plaintiff because (supposedly but not actually) there was no probable cause to do so and thus such

---

[16] The exchange Plaintiff cites is as follows:

> Q: All right. And then on the syringe for the simple possession charge, you said the needle on the dash was full of a substance you believed to be heroin, and it will be sent to the TBI for testing. What about that made you believe it to be heroin?
>
> A: I don't recall, sir.
>
> Q: Did you believe it to be heroin?
>
> A: I don't recall sir.

Doc. No. 34-1 at 20.

arrest was in violation of Plaintiff's Fourth Amendment rights. With respect to the second of these propositions, an officer "is entitled to qualified immunity if he or she could reasonably (even if erroneously) have believed that the arrest was lawful." *Eversion v. Leis,* 556 F.3d 484, 499 (6th Cir. 2009).

As *Eversion* makes clear, an officer is entitled to qualified immunity if the officer reasonably could have believed that an arrest was lawful. Applied to the present facts in this case the Court finds that Deffendoll was acting reasonably when he arrested Alford. Given the information he had at the time—namely that a baggie of powder, scales, baggies, syringes and prescription pills had been found in the truck (by him personally, no less)[17]—a reasonable officer in his circumstances could have concluded that there was probable cause to arrest Alford. The Court therefore concludes that an objectively reasonable officer could have believed that probable cause existed for the arrest.[18]

Plaintiff has not raised a triable issue to refute that at the time of his arrest, an officer aware of the information that was then available to Deffendoll could reasonably have believed there was probable cause for the arrest.[19] Deffendoll therefore is entitled to summary judgment on Plaintiff's

---

[17] Plaintiff has not provided any evidence that genuinely places in dispute that Defendoll had this information when he made the arrest.

[18] "Probable cause 'requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.'" *United States v. Christian*, 925 F.3d 305, 311 (6th Cir. 2019) (en banc) (quoting *United States v. Tagg*, 886 F.3d 579, 585 (6th Cir. 2018)). In *Christian*, the Sixth Circuit instructed that probable cause should be determined "[v]iewing the 'totality of the circumstances,' *Florida v. Harris*, 568 U.S. 237, 244 (2013), through the 'lens of common sense,' as the Supreme Court has instructed, *id*. at 248[.]" *Id.* at 309. The Court finds that under the totality of the circumstances, an officer in Deffendoll's position reasonably could have found that there was probable cause to arrest Alford given what Deffendoll uncovered during his search of the truck: syringes, a powdery substance, scales, baggies, and prescription pills.

[19] Nor has Plaintiff done what *Moore*, 2025 WL 274631, at *2, instructs claimants to do: cite a precedential case where, based on facts similar to the ones here, the court found that the officer made an unreasonable seizure (due to a lack of probable cause). And, as discussed, the Court cannot otherwise find that a reasonable officer could not have found that there was probable cause to arrest Plaintiff.

§ 1983 claim against him. *Anderson*, 483 U.S. at 641 (noting that an officer "is entitled to summary judgment [if], in light of the clearly established principles governing warrantless searches, he could, as a matter of law, reasonably have believed that [the action allegedly in violation of the Fourth Amendment] was lawful").

2. *Malicious Prosecution*[20]

Plaintiff also asserts a claim of malicious prosecution against Deffendoll. The Supreme Court has clarified that:

> American courts describe[] the elements of the malicious prosecution tort as follows: (i) the suit or proceeding was "instituted without any probable cause"; (ii) the "motive in instituting" the suit "was malicious," which was often defined in this context as without probable cause and for a purpose other than bringing the defendant to justice; and (iii) the prosecution "terminated in the acquittal or discharge of the accused."

---

[20] As stated above the Court has broken down Alford's § 1983 claim under Count I into "false arrest" and "malicious prosecution" claims following the parties' lead. The Court notes that the Supreme Court has continued to recognize a § 1983 claim for "malicious prosecution" as one based on a violation of the Fourth Amendment, and the Court will analyze the claim under the accepted Constitutional framework. *See Thompson v. Clark,* 596 U.S. 36. As stated above, the Court is also aware that the term "malicious prosecution" implies that the actionable conduct is that of prosecution, not of mere arrest. Despite this implication, a malicious-prosecution claim does in fact focus on seizure because an essential element of a malicious-prosecution claim is that the suit or proceeding was instituted without any probable cause as *Thompson v. Clark* makes clear. Therefore, while there are other elements in the claim of malicious prosecution (such as a favorable termination of the underlying criminal prosecution) the Court needs only to focus on this essential element in the instant analysis. That is because, as described above, the Court finds that Deffendoll has put forth enough evidence to demonstrate that a reasonable officer in his circumstances could have found probable cause to arrest Alford, and he is therefore entitled to qualified immunity.

A quick note on claims of malicious prosecution. This confusing term was criticized with strong language by Justice Alito in his dissent in *Thompson* calling this kind of claim "a chimera of a constitutional tort" and finding that "the Fourth Amendment and malicious prosecution have almost nothing in common." *Thompson v. Clark,* 596 U.S. 36, 49-50 (Alito, J., dissenting). The Court agrees with this criticism and finds that this claim mixes a classic Fourth Amendment violation with a state-law tort of wrongful prosecution (which typically is based on a legal proceeding beyond the point of arrest). The Court also notes that this kind of claim is distinct from the state law malicious-prosecution claim of the kind that Alford asserts in Count III of the Complaint.

*Thompson v. Clark*, 596 U.S. 36, 44, 142 S. Ct. 1332, 1338, 212 L. Ed. 2d 382 (2022). An essential element of a claim for malicious prosecution is that "the defendant's actions cause the plaintiff to be 'seized' without probable cause." *Pitt v. District of Columbia*, 491 F.3d 494, 510-511 (D.C. Cir. 2007). Further:

> th[e] distinction between a seizure and a prosecution does not matter . . . [w]hether it should be called a 'malicious prosecution claim' or simply an 'unreasonable-seizure claim,' the claim has two universally applicable ground rules. As a matter of substance, the Fourth Amendment prohibits only those pretrial seizures (or prosecutions) that lack probable cause, and § 1983 grants qualified immunity to defendants who mistakenly but reasonably conclude that probable cause exists.

*Lester v. Roberts*, 986 F.3d 599, 607 (6th Cir. 2021).

Deffendoll has raised a qualified immunity defense. Because the availability of qualified immunity as to this claim (as with the claim of false arrest) turns at least in part on whether a reasonable officer could have found probable cause to effectuate an arrest, the above-described rationale for bestowing qualified immunity on Deffendoll applies here as well. Mirroring its false-arrest analysis, the Court finds that Deffendoll has produced enough evidence to demonstrate that a reasonable officer could have determined that there was probable cause to arrest Alford based on the information that was available to Deffendoll at the time of the arrest.[21]

The burden therefore is on Plaintiff to show a genuine dispute of fact over whether the officer committed a constitutional violation. Plaintiff has attempted to meet that burden mainly by stating that Deffendoll did not actually believe that the syringe he found in Alford's truck contained heroin. According to Plaintiff, this constitutes a genuine issue of material fact pertaining to

---

[21] Given this indispensable element of the claim, the Court does not need to analyze any "later stages" of the malicious-prosecution claim, such as the bringing of charges, the issuance of an indictment or any other proceeding traditionally associated with a post-arrest prosecution (which ultimately did not take place in this instance).

Deffendoll's probable cause determination because it supposedly demonstrates that Deffendoll did think Alford possessed an illegal drug (despite Deffendoll also finding a powdery substance). Ultimately, however, this attempt fails. Despite Plaintiff's characterization of Deffendoll's actions, there is not enough in the record to raise an issue of triable fact that Deffendoll could not have found probable cause to arrest Alford. Instead, Deffendoll reasonably thought that he had probable cause based on what his search of Alford's truck revealed, as a reasonable officer in his circumstances could have determined. Alford's characterization simply does not comport with the factual record in this case and a reasonable officer in those circumstances could have easily made the same probable cause determination.

Therefore, with respect to his claim of malicious prosecution, Plaintiff has not met his burden of raising a triable issue of fact at this stage and it accordingly fails.

B. Officer Smith[22]

Defendants argue that Plaintiff has not articulated any specific, independent allegations against Smith, and that therefore Defendants have met their burden showing there is no genuine issue of material fact as to any claim made against Smith. The Court agrees. Smith did not search Alford's vehicle and did not make the decision to arrest or charge Alford with any crime. (RSUMF ¶¶ 6-11, 21). He also did not draft or swear to the Affidavits of Complaint that Deffendoll filled out. (RSUMF ¶ 21). Smith neither initiated the Parole Board hearing nor made the decision to revoke Alford's parolee status. (RSUMF ¶ 29). Smith was also not a party to the purported arrangement whereby Alford's charges would be dropped if he acted as a criminal informant. (RSUMF ¶ 31). Plaintiff has not pointed to anything in the record that genuinely places these facts

_____

[22] As noted above, the Court does not find it necessary to analyze the multiple claims against Smith. This analysis focuses solely on the 1983 cause of action against Smith and not the state law claims (Counts II and IV) that were brought against him.

in dispute. Therefore, the Court finds the absence of a genuine dispute that Smith did not act in any way that could have caused a violation of Alford's Fourth Amendment right to be free from unlawful seizures. The claims against him accordingly fail.

C. Cannon County

1. *Failure To Supervise*

Alford claims that Cannon County as a municipality should be held liable for the alleged Fourth Amendment violations of its officers under a so-called *Monell* theory of liability. *Monell* liability requires that "the municipality itself cause the constitutional violation at issue." *City of Canton v. Harris,* 489 U.S. 378, 385 (1989) (citing *Monell v. New York City Dept. of Soc. Svcs*, 436 U.S. 658 (1978)) (citation omitted). It also requires "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Id.* at 385. Plaintiff claims that Cannon County "has a widespread custom with the force of law of failing to supervise its officers, and of letting its officers make false accusations with impunity." (Doc. No. 1 ¶ 56).

To support this claim, Plaintiff has referred to the deposition testimony of Sheriff Darrell Young ("Sheriff Young") who was the sheriff of Cannon County during the time of Alford's arrest. Sherriff Young stated that due to staffing shortages at that time the sheriff's office was unable to supervise some of its lower-level officers. (Doc. 34-3 at 6). He also stated that usually officers are required to fill out a "narrative" section of their police report, which generally includes their reasons for finding probable cause. (*Id.* at 14). He also stated that officers' bodycam footage shows the kinds of things that officers typically write in the narrative section. (*Id.* at 14). Deffendoll's narrative section was apparently left blank on his police report. (*Id.* at 6).

Failure-to-supervise claims require a plaintiff to show that a municipality acted with "'deliberate indifference' to the risk of the [constitutional violation] and that its deliberate

indifference was the 'moving force' behind the assault." *Amerson v. Waterford Twp.*, 562 Fed. Appx. 484, 491—92 (6th Cir. 2014) (citations omitted). Even assuming *arguendo* that Cannon County acted with deliberate indifference to the risk of Fourth Amendment violations, Plaintiff's claim still fails. This is because Defendant has put forth enough evidence to demonstrate that there was no Fourth Amendment violation at all. As stated above, a reasonable officer in Deffendoll's position could have made the determination that there was probable cause to arrest Alford under these circumstances. Plaintiff has not pointed to any triable issues of fact demonstrating that it would have been clear to a reasonable officer that a Fourth Amendment violation occurred. Therefore this supposed deliberate indifference cannot have been the "moving force" behind any Fourth Amendment violation.[23] "[I]f a plaintiff does not suffer a constitutional violation, there can be no unconstitutional custom or policy that is 'the moving force' behind an act upon which municipal liability can attach." *Gohl v. Livonia Pub. Sch.*, 134 F. Supp. 3d 1066, 1090 (E.D. Mich. 2015) (citations omitted), *aff'd sub nom. Gohl v. Livonia Pub. Sch. Sch. Dist.*, 836 F.3d 672 (6th Cir. 2016).

Alternatively, even assuming *arguendo* that there was no probable cause, Defendant has demonstrated that there is not a genuine dispute of material fact as to whether Cannon County acted with "deliberate indifference." Defendants successfully note that Plaintiff has not provided any meaningful evidence pertaining to a pattern of constitutional violations on behalf of Cannon County. This suffices for them to meet their burden under the summary judgment standard by demonstrating that, contrary to Plaintiff's claims and representations in his briefing, the materials cited by Plaintiff do not actually establish the presence of a genuine dispute of material fact. Sheriff

---

[23] As previously noted, based on facts not in genuine dispute, a reasonable officer could have found probable cause to arrest Alford given the information available to Deffendoll at the time of the arrest.

Young admitted to staffing shortages due to competition with other counties in retaining officers, but this does not automatically mean that Cannon County was "deliberately indifferent" to constitutional violations on behalf of the officers it employed. Staffing shortages do not necessarily equate to a policy or custom of not training officers to avoid inflicting constitutional violations such as the one Plaintiff has alleged. True, Sheriff Young admitted that Deffendoll's narrative section on the report was not filled out and that usually supervising officers ensure that these reports are completed. But Deffendoll was wearing a bodycam that captured the entirety of the events that took place, and thus, as Sheriff Young described, captured what an officer would normally write down in the narrative section of a police report.[24] Further, Deffendoll's failure to fill out the report represents a single case of a general policy not being followed. This is not enough to establish *Monell* liability even if Cannon County was negligent in this instance, because "[w]here a city does create reasonable policies, but negligently administers them, there is no deliberate indifference and, therefore no § 1983 liability." *Shadd v. White*, No. 1:06-cv-2478, 2007 WL 2751897, at *10 (N.D. Ohio Sept. 19, 2007) (citing *Perez v. Oakland County*, 466 F.3d 416 (6th Cir. 2006). Defendoll's failure to fill out the report is a single act that cannot be imputed to Cannon County as having a custom or policy that resulted in it being "deliberately indifferent" to constitutional violations.

Therefore, Defendants have shown—without subsequent presentation of contrary evidence by Plaintiff—that there is not a genuine issue of fact pertaining to Cannon County's deliberate

---

[24] The bodycam footage was manually filed with the Court (Doc. No. 35) and the Court has reviewed the footage. Nothing in the footage indicates that Officer Deffendoll was not acting reasonably when he made his probable cause determination and arrested Alford. There is no mystery as to what the circumstances were when Officer Deffendoll made this decision. This is similar to the circumstances in *Moore v. Oakland County, Mich.,* No. 24-1563, 2025 WL 274631, in which the Sixth Circuit reviewed bodycam footage and ultimately found that an officer was reasonable in using force to arrest a suspect in an uncertain and tense environment.

indifference to any Fourth Amendment violations on behalf of its officers. Accordingly, the failure to supervise claim against Cannon County fails.

### 2. *Widespread Custom of False Drug Accusations*

Plaintiff also alleges that Cannon County is "liable because it has a widespread custom with the force of law of letting its officers make drug arrests in the absence of any chemical testing for drugs, thereby promoting false accusations." (Doc. No. 1 at 10). The quoted language indicates to the Court that Plaintiff here has identified, as the custom underlying Cannon County's alleged *Monell* liability, a custom of not conducting pre-arrest drug testing[25]—a policy that allegedly "promote[s] false accusations"[26]—rather than a custom of promoting false accusations.

Defendants take aim at the allegation that they have such a custom. With a focus on the availability of drug field-testing kits and drug testing policies, Defendants have met their burden to show a lack of a genuine issue of fact regarding Cannon County's alleged widespread custom of forgoing pre-arrest drug testing. (Doc. No. 34-3 at 13). Sheriff Young testified that the sheriff's office had drug field-testing kits available for officers at the office. (Doc. No. 34-3 at 13). He also stated that there have never been complaints made to the county commission about a lack of field tests. (Doc. No. 34-3 at 11). He also stated that the chief had knowledge about the availability of field tests on a day-to-day basis and that the office regularly conducted inventory to determine

---

[25] As thus identified, the alleged custom is *not* a custom (which would be a strikingly counterproductive and foolish policy for any police agency that wants the charges from its arrests to be dismissed rather than supported by evidence sufficient to take the charges to trial if needed) to avoid having purported drugs tested *post-arrest*.

[26] The Court does not know what exactly Plaintiff means by "thereby promot[ing] false accusations." In particular, it is unclear whether this means that false accusations are the *intentional goal* (as opposed to the unintentional by-product) of that custom, and, relatedly whether "false accusations" refers specifically to *knowingly* false accusations. It is in part (though only in part) because of Plaintiff's lack of clarity and specification in this regard that the Court does not view Plaintiff as alleging that there is a custom of false drug accusations; again, the alleged custom is a custom of forgoing pre-arrest drug-testing.

whether they had enough tests available or instead needed to order more. (Doc. No. 34-3 at 11). Further, the lack of drug field testing *in Alford's* case *in particular* is of very minimal (if any) probative value as to whether Cannon County has such a custom; the fact that an officer did not do something in one case is simply not indicative of whether the officer's employer had a policy of having officers not do that thing generally. Accordingly, Defendants have satisfied their burden to show that there is not a triable issue of fact regarding Cannon County's alleged custom of avoiding pre-arrest (field) testing of purported drugs.

Plaintiff relies on the fact that the syringe taken from the scene of the arrest was not tested thereafter. But this reliance is misplaced, for two reasons. First, again, non-testing in Alford's case is, at most, only very minimally probative of whether there was a (very foolish) custom of avoiding post-arrest testing of suspected drugs; it would provide, at most, a mere scintilla of evidence of such a custom. Second, the alleged custom is not a custom to avoid having purported drugs tested *post*-arrest.

Plaintiff attempts to demonstrate an issue of triable fact by pointing to Sheriff Young's lack of knowledge of the number of drug testing kits he had in the office and pointing out that the syringe was not ultimately tested for illegal drugs. While Sheriff Young in his deposition could not remember exactly how many field drug-testing kits the sheriff's office had available on hand, this does not mean that the police force was underequipped or that Cannon County had a custom of not having enough field drug-testing kits; still less does it mean that Cannon County had a custom of simply not doing field testing.

In short, Defendants have met their initial burden, and in response, Plaintiff has failed to meet his burden of identifying a genuine issue of material fact regarding his *Monell* claim. Accordingly, the claim fails.

**Counts II-IV: State Law Claims**

Alford has alleged state law claims against both Officers Smith and Deffendoll for false arrest and abuse of process and specifically has alleged a claim of malicious prosecution against Deffendoll. 28 U.S.C. § 1367(c)(3) states that: "The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if – the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The Sixth Circuit has held that "Generally, if the federal claims are dismissed before trial, … the state claims should be dismissed as well." *Taylor v. First of Am. Bank-Wayne*, 973 F.2d 1284 (6th Cir. 1992) (citations omitted); *see also Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226 (6th Cir. 1997) ("the district court may decline to exercise supplemental jurisdiction over a claim if 'the district court has dismissed all claims over which it has original jurisdiction'").

In the instant case, this Court had original jurisdiction over the federal § 1983 claims filed by Alford and it exercised supplemental jurisdiction over the remaining alleged state law claims. All of the federal claims, which constituted the basis of original jurisdiction in this suit, have been dismissed. The Court declines to exercise supplemental jurisdiction over the remaining state law claims. Therefore the claims will be dismissed without prejudice for potential disposition in an appropriate state court.

<u>CONCLUSION</u>

For the reasons set forth above, the Motion (Doc. No. 27) will be GRANTED IN PART AND DENIED IN PART. Specifically, the Motion will be granted as to Count I, containing Plaintiff's federal claims (which are brought against all Defendants under 42 U.S.C. § 1983), and summary judgment is granted Defendants as to those claims. However, the Motion will be denied as to Counts II, III and IV, containing Plaintiff's state-law claims. The state-claim claims are

dismissed without prejudice, leaving Plaintiff free to file them in an appropriate state court, subject to all applicable temporal and procedural requirements.

An appropriate accompanying order will be entered.


_Eli Richardson_
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE